# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6999 | **DATE** | 7/19/2001 |
| **CASE TITLE** | National Satellite Sports, Inc. vs. My Friends Place, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Because there are genuine issues of fact as to whether Cryer intercepted National Satellite's transmission of the Event and, if so, at what point in the transmission that took place, National Satellite's motion for summary judgment is denied. This action must proceed to trial, and counsel are ordered to appear at a status hearing at 9 a.m. July 25, 2001 to discuss arrangements to that end.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 0 2001 date docketed | /5 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 JUL 19 PM 2:33 | 7/19/2001 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL SATELLITE SPORTS, INC., )
)
         Plaintiff, )
)
v. ) No. 00 C 6999
)
MY FRIENDS PLACE, et al., )
)
         Defendants. )

## MEMORANDUM OPINION AND ORDER

National Satellite Sports, Inc. ("National Satellite") has sued My Friend's Place, its owner Joyce Cryer and Billy Cryer (defendant is referred to here as "Cryer," signifying Joyce Cryer alone, because "My Friend's Place" is simply a doing-business name and because Billy Cryer is deceased). National Satellite asserts that Cryer intercepted its closed-circuit telecast of the January 16, 1999 professional fight between Mike Tyson and Francois Botha in violation of the Cable Communications Policy Act of 1984, 47 U.S.C. §§553 and 605.[1] National Satellite has moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and the parties have provided submissions in support of and in opposition to that motion. For the reasons stated in this memorandum opinion and order, the motion is denied.

### Summary Judgment Standards

Familiar Rule 56 principles impose on National Satellite the

---

[1] Each of those provisions will simply be cited "Section--," omitting the reference to Title 47.

burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F.3d 262, 265 n. 2 (7th Cir. 1997)).

As with every summary judgment motion, this Court accepts nonmovant Cryer's version of any disputed facts. But here the level of acceptance has been limited by the manner in which Cryer has approached (or, more accurately, has failed to approach) the requirements of this District Court's LR 56.1, adopted to implement Rule 56.

In that respect LR 56.1(b)(3)(B) provides:

> All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party.

Although National Satellite has submitted a Statement of Uncontested Facts pursuant to LR 56.1(a)(3), Cryer has failed to tender the required LR 56.1(b)(3)(A) response. That delinquency is tempered somewhat by her having filed what she labels a "Rule 56(e) Statement of Material Disputed Facts" accompanied by record support.

Although National Satellite was due to file its reply memorandum and any supporting materials by July 12, this opinion

2

is being issued without its having done so. Its counsel did belatedly (on July 18) ask for an extension of time because Cryer's response had been received somewhat late, but because the response had identified material factual issues that preclude summary judgment in any event, nothing that National Satellite could have proffered would have served to unscramble the factual omelet. Hence National Satellite's counsel was informed that no reply could prove to be constructive and that none needed to be filed.

To return to the subject of Cryer's noncompliance with LR 56.1(b)(3), this opinion will nevertheless consider the additional facts set out in Cryer's Statement of Material Disputed Facts to be true for purposes of the current motion to the extent that they controvert any statements made by National Satellite.[2] All of National Satellite's remaining statements are deemed admitted.[3] What follows in the Facts section is culled

---

[2] Myriad Seventh Circuit opinions support the authority of a district court to enforce the strictures of LR 56.1 to the letter--see, e.g., Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 870-71 & n.4 (7th Cir. 2000) and cases cited there. Because this is a factually simple case, so that considering the additional facts submitted by Cryer does not force an unwarranted and burdensome judicial hunt through the record, this Court will take those into account in the interest of not unduly penalizing Cryer for her lawyer's flawed workmanship.

[3] It should be noted that National Satellite's Statement of Uncontested Facts does not comply with all of the requirements of LR 56.1(a) either. Paragraphs 1-12 and 16-20 of the 20-paragraph Statement cite to National Satellite's Complaint rather than to parts of the record for support, a procedure that is contrary to

3

primarily from National Satellite's Statement of Uncontested Facts (cited simply "¶--").

### Facts

National Satellite entered into an exclusive closed-circuit television license agreement to exhibit and distribute the closed-circuit rights to the telecast of the January 16, 1999 Tyson-Botha fight and all related undercard and preliminary bouts (collectively the "Event") (¶1). In turn, various Illinois establishments contracted with National Satellite to broadcast the Event in exchange for a fee based, among other things, on each establishment's total capacity (¶9).

National Satellite's transmission of the Event was electronically coded or scrambled to prevent unauthorized receipt or interruption (¶10). Establishments that contracted with National Satellite to broadcast the Event were provided with the electronic decoding equipment and satellite coordinates necessary to receive the signal (¶12). But My Friend's Place, a bar owned by Cryer at 10815 South Michigan Avenue in Chicago, did not purchase the rights to receive, transmit and publish the Event (¶11; Cryer Aff.).

National Satellite has submitted the affidavit of John J.

---

the directives in Rule 56(c) and (e) and LR 56.1(a) (at least to the extent that the Complaint's allegations are not admitted). But Cryer's failure to file a response that has objected to the statements on that basis calls for any such objection being deemed waived, and for the evidence thus being admitted.

4

Gorman ("Gorman"), in which he attests (1) that he entered My Friend's Place (which he incorrectly listed as located at 10817 rather than 10815 S. Michigan) at 8:45 p.m. on Saturday, January 16, 1999 and (2) that he observed on the bar's television set the sixth round of the undercard fight between boxers Vargas and Tackie (Gorman Aff.). That bout was part of the Event (¶14). Gorman swore further that the bartender at My Friend's Place that night was a black female, approximately 30 years old and wearing a blue and grey checked top (Gorman Aff).[4]

In response Cryer's affidavit says that she worked at My Friend's Place every night it was open in January 1999, and she did not recall the bar broadcasting a boxing match featuring Mike Tyson during that time period (Cryer Aff). Cryer further attests that no one other than herself or her friend John Eberhart would have been working at the bar on the night of January 16 (Cryer Aff. ¶18). Finally Cryer admits that there is a satellite dish on the roof of My Friend's Place, but she swears it has not been in service since 1996 (id. ¶¶12, 14). Cryer disputes that My

---

[4] Cryer has moved to strike Gorman's affidavit on the grounds that Gorman misstated the address of My Friend's Place, that Cryer never employed a female bartender around the age of 30 and that Gorman failed to describe the bar in greater detail. That motion is wholly frivolous, and it is denied. Cryer's arguments go only to Gorman's credibility, not to the admissibility of his affidavit. In total conformity with Rule 56(e), the affidavit is based on personal knowledge, Gorman is competent to testify to the matters stated and the affidavit sets forth facts that would be admissible at trial.

5

Friend's Place had the ability to intercept National Satellite's transmission.

## Transmission Intercepted?

National Satellite seeks to hold Cryer liable under both Sections 553 and 605 for allegedly intercepting its closed circuit transmission of the Event and broadcasting it to the bar's patrons. Because there are material issues of fact in that regard, National Satellite's motion for summary judgment must be denied.

There is plainly a disputed factual issue as to whether Cryer did intercept and broadcast the Event. While Gorman testified that he watched part of the Event at My Friend's Place, Cryer denies that the Event was broadcast there and disputes Gorman's description of the bartender working at any time in January 1999. Because a jury would be entitled to accept Cryer's version of events over Gorman's, she has raised a genuine issue of material fact on that score (see, e.g., Logan v. Caterpillar, Inc., 246 F.3d 912, 924 (7th Cir. 2001), holding that because a court cannot make a credibility determination on a motion for summary judgment, the nonmovant's denial suffices to create a genuine issue of material fact).

Another unresolved factual matter, though it is not necessarily material (that is, outcome-determinative), stems from the teaching in United States v. Norris, 88 F.3d 462, 469 (7th

Cir. 1996) that Cryer cannot be liable under <u>both</u> Sections 553 and 605 for any alleged interception:

> The only plausible, consistent interpretation of these three sentences together [referring to a portion of the legislative history, H.R. Rep. No. 934, at 83-84, reprinted in 1984 U.S.C.C.A.N. at 4720-21] is that Congress intended for §605 to apply to the unlawful interception of cable programming transmitted through the air, while it intended for §553 to apply to the unlawful interception of cable programming while it is actually being transmitted over a cable system.

National Satellite's submissions do not make entirely clear whether it contends that Cryer intercepted its satellite transmission (perhaps by pirating the satellite coordinates necessary to receive a signal of the Event, conduct that would be actionable under Section 605) or whether it contends instead that Cryer intercepted the Event by use of a decoder box after the satellite transmission was received by a cable television provider and was traveling over a cable network, conduct that would be actionable under Section 553.

Hence even if National Satellite had shown that Cryer did intercept and broadcast the Event, it could not be determined on the present record under which statutory provision Cryer would be liable. That second defect would not necessarily pose a problem, however, for even though the two sections provide different ranges of permissible damage awards, most frequently such awards fall within the overlapping scope allowed by both sections.

7

## Conclusion

Because there are genuine issues of fact as to whether Cryer intercepted National Satellite's transmission of the Event and, if so, at what point in the transmission that took place, National Satellite's motion for summary judgment is denied. This action must proceed to trial, and counsel are ordered to appear at a status hearing at 9 a.m. July 25, 2001 to discuss arrangements to that end.

_____
Milton I. Shadur
Senior United States District Judge

Date: July 19, 2001